**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division**

| | |
|---|---|
| RAMON GONZALEZ, VICTOR RODRIGUEZ ORTIZ, and ADDELYN MARTE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>XPO LAST MILE, INC., d/b/a XPO LOGISTICS,<br><br>    Defendant. | Civil Action No. _____ |

**<u>DEFENDANT XPO LAST MILE, INC.'S NOTICE OF REMOVAL</u>**

  Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, XPO Last Mile, Inc., hereby removes this matter to the United States District Court for the District of Massachusetts, Eastern Division. The grounds for removal are as follows:

**THE PUTATIVE CLASS ACTION**

  1. Ramon Gonzalez, Victor Rodriguez, and Addelyn Marte, on behalf of themselves and all others similarly situated, filed a complaint against XPO Last Mile, Inc. ("XPO LM") on July 20, 2018, in the Superior Court of the Commonwealth of Massachusetts for the County of Essex, Case No. 1877CV01075B ("*Gonzalez*" or "Complaint").

  2. Copies of all process, pleadings, papers and orders filed in the Superior Court of the Commonwealth of Massachusetts for the County of Essex are attached as **Exhibit A**.

  3. The plaintiffs allege that they and the other putative class members worked as delivery drivers for XPO LM, "delivering products to customers' homes from stores such as Home

Depot and Lowe's." Ex. A. (Compl. ¶¶ 1, 2-4, 32, pp. 8, ¶ 1). The plaintiff-drivers claim they were (or are) employees of XPO LM (as opposed to employees of the independent businesses and motor carriers that provided delivery services), and were misclassified as independent contractors. *See* Ex. A. (Compl. ¶¶ 1, 32).

4. As purported employees, the plaintiffs assert the following four causes of action against XPO LM: (1) misclassification, per M.G.L. c. 149 § 148B; (2) violation of the Massachusetts Wage Act, M.G.L. c. 149 § 148; (3) violation of the Massachusetts Minimum Wage Law, M.G.L. c. 151 § 1A; and (4) common law unjust enrichment. *See generally* Ex. A (Compl.).

5. On or about September 21, 2018, XPO LM answered the Complaint in the Essex County Superior Court. *See* Ex. A.

6. Thereafter, the parties exchanged some written discovery.

## **VENUE AND TIMELINESS**

7. Venue is proper in the United States District Court for the District of Massachusetts under 28 U.S.C. § 1441(a) because the District of Massachusetts, Eastern Division, includes the Superior Court of Massachusetts for the County of Essex. 28 U.S.C. § 1441(a).[1]

8. The Complaint contains an unquantified *ad damnum*, stating only that the plaintiffs seek "[a]ll damages to which Plaintiffs are entitled under Massachusetts law," "[s]tatutory trebling of damages, pursuant to Massachusetts law," and "[a]ttorney fees, costs, and interest as allowed by law." Ex. A. (Compl. at pp. 8 ¶¶ 2-4). The Complaint otherwise contains little information about the nature and extent of alleged damages. *See generally* Ex. A.; Ex. A. (Compl. ¶ 19)

---

[1] A related case, captioned *Muniz v. XPO Last Mile, Inc.*, Case No. 1885CV1083A, was filed in Massachusetts Superior Court in Worcester on July 17, 2018. XPO Last Mile, Inc. subsequently removed that case to the Central Division of the United States District Court for the District of Massachusetts, where the defendant's motion to compel arbitration of the plaintiffs' individual claims is pending. *See Muniz v. XPO Last Mile, Inc.*, Case No. 4:18-cv-11905-TSH. Defendant reserves the right to move to relate and transfer this case to the Central Division.

(alleging only that "Plaintiffs were paid $120 per shift, regardless of how long the shift took. *On some occasions*, Plaintiffs worked in excess of 12-hour days. . . . Plaintiffs earned less than the Massachusetts minimum wage *on one or more occasions* within the prior three years" (emphasis added)).

9. Plaintiffs attempted to plead around federal jurisdiction by asserting that the amount in controversy is "more than $25,000 and less than $5,000,000" (Compl. ¶ 6), and "the size of the class is less than 100" (Compl. ¶ 33). Nowhere did plaintiffs assert information adequate to evaluate the exact nature of the claims they were pursuing or the damages they seek.

10. Consequently, XPO LM propounded interrogatories to the plaintiffs on November 9, 2018, in part to ascertain the nature and extent of the plaintiffs' alleged damages. The plaintiffs served their answers on January 30, 2019. *See* **Exhibit B,** Plaintiffs' Interrogatory Answers.

11. It is well accepted that "discovery documents such as . . . answers to interrogatories . . . are accepted as 'other papers,' receipt of which can initiate a 30-day period of removability," *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014) (quoting 14C Wright & Miller, Federal Practice and Procedure § 3731 (4th ed.)).

12. As evidenced and explained *infra*, the plaintiffs' interrogatory answers "set forth sufficient facts from which the amount in controversy can easily be ascertained," *Romulus*, 770 F.3d at 75, and create a "reasonable probability that more than $5 million is at stake in this case." *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 50 (1st Cir. 2009.

13. Therefore, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(3) because it was filed within thirty (30) days after XPO LM received the plaintiffs' answers to interrogatories—the "other paper from which it [could] first be ascertained" that this action is removable.

**REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")**

14. This Court has original jurisdiction over this case because it is a putative class action in which the proposed class has more than 100 members, the amount in controversy exceeds $5 million, and there is minimal diversity.  28 U.S.C. § 1332(b), (d); *see also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

### I. Minimal Diversity Exists

15. The minimal diversity requirement of CAFA, 28 U.S.C. § 1453(d)(2)(A), is satisfied whenever at least one plaintiff and one defendant are citizens of different states.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a); *see*, *e.g.*, *McMorris v. TJX Cos.*, 493 F. Supp. 2d 158 (D. Mass. 2007).

16. Plaintiff Ramon Gonzalez alleges that he is a resident of Massachusetts, Ex. A (Compl. ¶ 2), and Plaintiffs Victor Rodriguez and Addelyn Marte both allege that they are residents of New Hampshire.  Ex. A (Compl. ¶¶ 3, 4).  For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *See Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29 (1st Cir. 2008). Hence, it is reasonable to conclude that plaintiffs are citizens of either Massachusetts or New Hampshire.

17. XPO LM is a Georgia citizen—it is a Georgia corporation with its principal place of business in Marietta, Georgia.  S*ee Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (defining the principle place of business as the "nerve center").

18. Diversity is therefore established because the plaintiffs are citizens of Massachusetts or New Hampshire and the defendant is a citizen of Georgia.

### II. The Proposed Class Exceeds 100 Members

19. The plaintiffs define the proposed class as "all persons who performed deliveries

for Defendant in Massachusetts during the relevant limitations period, excluding any drivers who had master contractor arrangements with XPO." Ex. A. (Compl. pp. 8, ¶ 1).

20.  Massachusetts Wage Law claims pursuant to M.G.L. c. 149, § 148 are subject to a three year statute of limitations.  M.G.L. c. 149, § 148.  For purposes of this notice of removal, XPO LM uses the conservative assumption of July 20, 2018—the date on which the Complaint was filed in state court—as the date on which the case was commenced.  Accordingly, the relevant limitations period reaches back to July 20, 2015.

21.  A preliminary investigation by XPO LM revealed that more than 500 different individuals worked as delivery drivers for XPO LM's independent contractor motor carriers that operated in Massachusetts during the putative class period (excluding any person who worked as a delivery driver, but had entered into a delivery service agreement with XPO LM through their business entity).

### III.  The Amount in Controversy Exceeds $5 Million

22.  Although XPO LM denies that it is liable to the plaintiffs and the proposed class members, for jurisdictional purposes, the amount in controversy exceeds $5,000,000.

23.  In determining the amount in controversy under CAFA, courts "must examine relevant state law to determine the nature and extent of" all potential damages based on the claims in the complaint, which includes statutory damages, statutory damage multipliers, and statutorily authorized attorneys' fees.  *Lucas v. Ultima Framingham LLC*, 973 F. Supp. 2d 98, 101 (D. Mass. 2013); *see Stewart v. Tupperware Corp.*, 356 F.3d 335, 339 (1st Cir. 2004); *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, (D.N.H. 2004) (including statutory damage multiplier to amount in controversy); *Spielman v. Genzyme Corp.*, 251 F.3d 1, 6 (1st Cir. 2001) (including statutory attorneys' fees to amount in controversy).

24.     To satisfy CAFA's amount in controversy requirement, the removing defendant need only demonstrate a "reasonable probability" that the aggregate damages of the putative class are greater than $5 million at the time of removal. *Amoche*, 556 F.3d at 43; *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 (D. Mass. 2009); *see Standard Fire*, 133 S. Ct. 1345.

### A.     The Amount in Controversy

25.     XPO LM calculated the amount in controversy based on the damages and attorneys' fees sought by the plaintiffs as a result of alleged unpaid overtime owed to the plaintiffs. Despite only vaguely claiming, in Count I of their Complaint, recoupment of "the wages and benefits they would have received as employees," Ex. A (Compl., pp. 7, Count I), the plaintiffs expressly seek damages for unpaid overtime, for the first time, in their interrogatory answers. *See* Ex. B (Plaintiffs' Answers to Interrogatory No. 9) ("Plaintiff is seeking the wages and benefits he should have received if he were properly classified as an XPO employee, including *overtime pay* and benefits offered to XPO direct employees." (emphasis added)).

26.     The aggregated damages for the putative class-wide overtime claim, alone, satisfies the $5 million amount in controversy requirement making it unnecessary to estimate the additional amounts placed in controversy by the plaintiffs' claims for benefits and expense reimbursements[2] (Counts II through IV).

#### 1.     The Plaintiffs' Overtime Claims

27.     The plaintiffs allege that XPO LM "misclassified Plaintiffs and the class members as independent contractors in violation of M.G.L. c. 149, § 148B [for which] Plaintiffs and the class members are entitled to recover the wages and benefits they would have received as

---

[2] Each of the three plaintiffs allege they were "required to pay thousands of dollars" in expense reimbursements, but do not articulate the precise amounts. *See* Ex. B (Plaintiffs' Answers to Interrogatory No. 2).

employees . . . ." Ex. A (Compl. Count I). For the first time in their interrogatory answers, the plaintiffs clarify that they seek overtime pay as among the "wages and benefits" for which they seek damages. *See* Ex. B (Plaintiffs' Answers to Interrogatory No. 9).

28.    <u>Liability Period.</u>   Plaintiff Gonzalez claims he worked for XPO LM from April 2015 "until January 2018," and Plaintiffs Ortiz and Marte both claim they started working for XPO LM in April 2015 and "continue[] to work for Defendant"—at least as of the date the Complaint was filed (July 20, 2018). Ex. A (Compl. ¶¶ 2-4). Given the relevant limitations period and the plaintiffs' interrogatory answers, XPO LM calculates that Gonzalez worked approximately 133 weeks, and Ortiz and Marte worked 156 weeks, each.

29.    <u>Pay Rate.</u>   The plaintiffs claim that they were paid by the day (*i.e.*, "shift"), in the amount of $120 per day.[3] Ex. A (Compl. ¶ 19); *see also* Ex. B (Plaintiffs' Answers to Interrogatory No. 15).

30.    <u>Alleged Weekly Overtime Hours.</u>   The plaintiffs allege that they worked 12-hour-plus days "[o]n some occasions." Ex. A (Compl. ¶ 19). Their interrogatory answers, however, provide additional detail:

    a.   Plaintiff Gonzalez claims he worked between six and seven days per week, between 10 and 14 hours per day. This totals to between 60 and 98 hours per week, or from 20 to 58 hours of overtime per week. *See*, Ex. B (Gonzalez's Answer to Interrogatory No. 8).

    b.   Plaintiff Ortiz claims he worked between 10 and 17 hours per day, seven days a week, or from 70 to 119 hours per week, which equals 30 to 79 hours of overtime per week. *See* Ex. B. (Ortiz's Answer to Interrogatory No. 8).

    c.   Plaintiff Marte claims that he worked from eight and a half to 19 hours per day, six (but sometimes seven) days per week, or from 51 to 133 hours per week. *See* Ex. B (Marte's Answer to Interrogatory No. 8.)

---

[3] Unlike Gonzalez and Marte, and unlike the allegation in the Complaint, Ortiz' interrogatory answers indicate he was paid "initially" $100 per day, then $115 per day, then "$120, $125 or $130 per day, for approximately three years," before earning $135 and $140 per day. Ex. B (Ortiz' Answer to Interrogatory No. 15).

31. <u>Plaintiff Gonzalez' Overtime Claim</u>. Plaintiff Gonzalez's interrogatory answers indicate that he seeks approximately $6 per hour for unpaid overtime,[4] he worked a minimum of 20 hours of overtime per week, and worked for 133 weeks. Multiplying the allegedly unpaid overtime rate by the number of hours of overtime he claims and by the number of weeks he worked, Gonzalez seeks, at minimum, a total of **$15,960** in unpaid overtime.

32. <u>Plaintiff Ortiz' Overtime Claim</u>. Plaintiff Ortiz's interrogatory answers indicate that he seeks approximately $5 per hour for unpaid overtime, he worked a minimum of 30 hours of overtime per week, and worked 156 weeks. Multiplying the allegedly unpaid overtime rate by the number of hours of overtime he claims and by the number of weeks he worked, Ortiz seeks, at minimum, a total of **$23,400** in unpaid overtime.

33. <u>Plaintiff Marte's Overtime Claim</u>. Plaintiff Marte's interrogatory answers indicate that he seeks approximately $7 per hour for unpaid overtime, he worked a minimum of 11 hours of overtime per week, and worked for 156 weeks. Multiplying the allegedly unpaid overtime rate by the number of hours of overtime he claims and by the number of weeks he worked, Gonzalez seeks, at minimum, a total of **$12,012** in unpaid overtime.

34. <u>The Putative Class' Overtime Claim.</u> Taking Marte's overtime claim of $12,012 (the lowest of the three named plaintiffs), and assuming his claim is typical of the putative class members' claims, the aggregate damages for a putative class of 500 members is **$6,006,000** ($12,012 x 500).[5]

---

[4] The overtime rate represents the difference between the regular hourly rate and the allegedly unpaid overtime rate calculated at 1.5 times the regular rate.

[5] By comparison, extrapolating the putative class's estimated overtime claims using Gonzalez's overtime claim, the aggregate claims for a 500 person putative class equals $7,980,000**.** Similarly, using Ortiz's overtime claim, the aggregate claims for a 500 person putative class equals $11,700,000. All well above the jurisdictional threshold.

35. Ultimately, "th[e]s[e are] conservative estimate[s]" based on the information that plaintiffs have disclosed under oath. *See Garick v. Mercedes-Benz USA, LLC*, No. 17-cv-12042-IT, 2018 U.S. Dist. LEXIS 53980, at *9 (D. Mass. Mar. 30, 2018).

### 2. Statutory Damages

36. "When a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." *Evans*, 326 F. Supp. 2d at 222.

37. Per Massachusetts Wage Law, if the plaintiffs prevail on their Massachusetts Wage Law claims, they would be entitled to "treble damages, as liquidated damages, for any lost wages and other benefits." M.G.L. c. 149, § 150; M.G.L. c. 151 § 20. The plaintiffs expressly seek "statutory treble damages" in their Complaint. Ex. A (Compl., pp. 8, ¶ 3).

38. Assuming the plaintiffs' claims are typical of those of the class, trebled damages, easily exceed CAFA's $5 million jurisdictional threshold. For example, using Marte's claim (the lowest of the three named plaintiffs), trebled damages could reach **$18,018,000** ($6,006,000 x 3).

39. Thus, it is reasonably probable that counting damages multiplied by the statutory multiplier, the amount in controversy is well above CAFA's $5 million threshold.

### 3. Attorneys' Fees

40. Courts also include attorneys' fees when calculating the amount in controversy. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 6 (1st Cir. 2011); *see also Lucas*, 973 F. Supp. 2d at 101 ("[A] court must take into account attorneys' fees where, as here, the award of those fees is statutorily authorized.").

41. If the plaintiffs succeed in proving their claims, they will be entitled to attorneys' fees pursuant to M.G.L. c. 149, § 150 ("shall also be awarded the costs of the litigation and

reasonable attorneys' fees"). The plaintiffs seek to recover attorneys' fees. Ex A. (Compl., p. 8, ¶ 4.)

42. For purposes of calculating the amount in controversy here, it can be assumed that fees will amount to something between 20% and 35% of the total recovery. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005); *Mazola v. May Dept. Stores Co.*, 1999 WL 1261312 at *4 (D. Mass. Jan. 27, 1999) (Gertner, J.) (unreported opinion) ("In this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions.").

43. Taking into account a reasonable estimate of attorneys' fees, it is reasonably probable that the amount in controversy for the putative class's overtime claim could reasonably be between **$21,621,600** ($18,018,000 x 1.20) and **$24,324,300** ($18,018,000 x 1.35).

44. Finally, it is worth noting that in order to surpass the $5 million CAFA threshold, the putative class members' claims need only amount to **$2,666.67** each (including overtime pay, and yet unquantified unpaid minimum wages, benefits, unpaid expense reimbursements, and "unauthorized deductions" for the three year statutory period) ($2,666.67 x 500 = $1,333,333.33 x 3 for treble damages = $4,000,0000 + 25% fees = $5,000,000). Ex. A (Compl. pp. 7-8). Plaintiffs' claims alone are 4 to 8 times more than this amount.

45. In sum, it is reasonably probable that the amount in controversy exceeds CAFA's $5 million jurisdictional threshold because the overtime claim alone, plus statutory treble damages, and attorneys' fees, is four to five times the $5 million jurisdictional threshold.

## NOTICE TO THE PLAINTIFFS AND ESSEX COUNTY SUPERIOR COURT

46. As required by 28 U.S.C. § 1446(d), a copy of the original notice of removal will be served on the plaintiffs' counsel of record, Steve Churchill, Hillary Schwab, and Rachel Smit

of Fair Work, P.C., 192 South Street, Suite 450, Boston, MA, 02111.  In addition, a copy of this notice of removal will be filed with the Clerk of the Court for the Superior Court of the County of Essex.  A true and correct copy of the Notice to Adverse Parties of Removal of Action to the United States District Court by XPO Last Mile, Inc., to be filed in the Superior Court of the County of Essex, without the exhibits, is attached hereto as **Exhibit C**.

47. The undersigned counsel for XPO LM has read the foregoing and signs the Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by U.S.C. § 1446(a).

XPO LAST MILE, INC.

By its attorneys

*/s/ Douglas J. Hoffman*
Douglas J. Hoffman, BBO #640472
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA  02116
(617) 367-0025; FAX: (617) 367-2155
douglas.hoffman@jacksonlewis.com

Dated:  February 15, 2019

## **CERTIFICATE OF SERVICE**

      This is to certify that on this 15th day of February, 2019, a true and accurate copy of the above document was served upon Plaintiffs' counsel, Steve Churchill, Hillary Schwab, and Rachel Smit of Fair Work, P.C., 192 South Street, Suite 450, Boston, MA, 02111, via the Court's electronic filing system.

                                                */s/ Douglas J. Hoffman*
                                                Jackson Lewis P.C.