UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:19-cv-10290-FDS

|  |  |
|---|---|
| RAMON GONZALEZ, VICTOR RODRIGUEZ ORTIZ, and ADDELYN MARTE, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs | ) |
| v. | ) ) |
| RXO LAST MILE, INC., | ) ) |
| Defendant | ) ) |

**ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

1

**Table of Contents**

Background ................................................................................................................................... 3

Terms of Proposed Settlement ...................................................................................................... 6

Argument ....................................................................................................................................... 7

    1.    The proposed settlement is fair, reasonable, and adequate. ............................................... 8

    3.    The proposed attorneys' fees and costs are fair and reasonable. ..................................... 12

    4.    The proposed notice satisfies Fed. R. Civ. P. 23. ............................................................ 15

Conclusion .................................................................................................................................. 16

Exhibit 1 (Settlement Agreement)

Exhibit 2 (Proposed Class Notice)

Exhibit 3 (Proposed Order)

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Ramon Gonzalez, Victor Rodriguez Ortiz, and Addelyn Marte, on behalf of themselves and all others similarly situated, respectfully request preliminary approval of a proposed class settlement. A copy of the settlement agreement ("Agreement") is attached as Exhibit 1. The Plaintiffs also seek approval of a proposed notice to be sent to class members ("Class Notice"), a copy of which is attached as Exhibit 2. A proposed order is attached as Exhibit 3.

## Background

This case involves claims by delivery drivers against RXO Last Mile, Inc. ("RXO"), formerly known as XPO Last Mile, Inc. or "XPO", a last-mile transportation company that brokers deliveries of appliances and other goods for Lowe's in Massachusetts (among other operations not relevant here). To fulfill its contractual obligations to Lowe's, RXO contracts with motor carrier companies that engage delivery drivers to perform the deliveries RXO arranges on Lowe's behalf. The Plaintiffs are delivery drivers who were engaged by some of the motor carriers with whom RXO contracts. The Plaintiffs filed a Class Action Complaint and Jury Demand in Massachusetts Superior Court on July 20, 2018. RXO removed the case to this Court on February 14, 2019. (ECF No. 1).

The Plaintiffs' claims focus on two practices: (1) RXO charged deductions to the motor carriers for delivery issues, such as damaged property, which were passed on to them; and (2) RXO should have but did not provide employment benefits to the drivers. Both claims require drivers to prove that RXO was their employer, an assertion that RXO vigorously disputes. RXO contends that drivers are hired and controlled by various carriers that contract with RXO. RXO further contends that even if drivers were its employees, the carriers (not RXO) made final

3

decisions about taking deductions from drivers. And, according to RXO, even if drivers were their employees, the drivers have no viable claim for benefits.

As reflected on the docket, the parties engaged in substantial litigation over the past five years. During the initial discovery period, the Plaintiffs took the depositions of various RXO representatives, including RXO's Operations Manager for its Lowe's operations in Massachusetts, RXO's Vice President of Commercial Accounts, and RXO's Vice President of Technology. The Plaintiffs also obtained thousands of pages of documents from RXO, including contracts, operations handbooks, and other documents detailing its operations. RXO, meanwhile, deposed each of the three Plaintiffs, asking them detailed questions about their delivery work, and obtained records from the Plaintiffs.

On April 30, 2021, the Plaintiffs moved to certify a class, relying on this extensive record to support their position. (ECF No. 56). The Plaintiffs also submitted affidavits from other drivers. (ECF No. 56-14). On January 10, 2022, following a hearing, the Court allowed the Plaintiffs' motion to certify a class. (ECF No. 66). The class was defined as, "All drivers who performed deliveries in Massachusetts on behalf of XPO to Lowe's customers within the period of July 20, 2015 to present, excluding helpers and any drivers who signed contracts with XPO." (*Id*. at 16). RXO petitioned for interlocutory review of the Court's decision; the First Circuit denied the petition on August 5, 2022. *See* Judgment, *Gonzalez v. RXO Last Mile, Inc.*, Case No. 22-8002 (Aug. 5, 2022).

On April 28, 2023, following the Court's certification of a class and RXO's production of class information, notice was issued to members of the Class. No members of the Class opted out. The parties also engaged in an additional round of post-certification discovery. RXO took the depositions of the seven drivers who submitted affidavits in support of the Plaintiff's motion

for class certification and the corporate deposition of one of the relevant motor carriers, Next Level Logistics, LLC.  For their part, the Plaintiffs obtained voluminous records showing the alleged deductions imposed by RXO, including, for each such deduction, the claim number, whether the claim was approved, the date of the alleged incident, the reason for the deduction, the amount of the deduction, and the associated driver, among other things.

On December 7, 2023, RXO moved to decertify the class (ECF No. 127) and for an entry of partial summary judgment (ECF No. 129). The Plaintiffs also moved for partial summary judgment in their favor. (ECF No. 132). On August 7, 2024, following a hearing, the Court denied the parties' cross motions for partial summary judgment (ECF No. 159) and RXO's motion to decertify the class (ECF No. 160).

In its summary judgment ruling, the Court ruled that the Plaintiffs could not establish RXO's liability based on the test set forth in Mass. Gen. Laws ch. 149, § 148B; instead, they would be required to establish liability using the so-called *Jinks* standard for joint employment. *Id*. at 14, *citing Jinks v. Credico (USA) LLC*, 488 Mass. 691 (2021). That standard is fact-intensive and looks to four non-dispositive factors, including "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Jinks*, 488 Mass. at 703-704.

Following additional discovery, the parties agreed to participate in a voluntary mediation session on January 24, 2025, using an experienced and well-regarded professional mediator, Hunter Hughes, Esq. The case was not resolved during that session, but the parties made some headway and identified the need for additional data, which RPO later provided. Following the production of that further data, the parties attended a second day of mediation on August 11,

5

2025. After further negotiations and a proposal by the mediator, a final agreement in principle was reached on August 12, 2025. The parties then negotiated the terms of a formal agreement, in the form attached as Exhibit 1.

### Terms of Proposed Settlement

The gross amount of the settlement ("Total Settlement Fund") is $2,250,000, to be paid within 35 days of the Court's final approval of the proposed settlement, and includes all payments to class members, Plaintiffs' attorney's fees and expenses, the cost of the claims administration process, service awards, and all employment taxes. The Gross Settlement Fund will be paid into a qualified settlement fund ("QSF") to be set up and administered by a third-party administrator ("TPA"). Class Counsel will be responsible for settlement administration, through the TPA.

Out of the Gross Settlement Fund, the Agreement provides that Class Counsel will seek an award of attorneys' fees equal to one-third of the Gross Settlement Fund, in the amount of $750,000; reimbursement of litigation costs, which currently total about $26,303; service awards of $25,000 for each the three Plaintiffs, all of whom have been involved in this litigation for over five years; service awards for the seven drivers who sat for depositions in the amount of $2,500 each; and the costs of the TPA, who will be selected after a competitive bidding process. The remaining amount of the Gross Settlement Fund will be distributed to members of the Class ("Net Settlement Fund"). A precise breakdown of the proposed distribution of the Total Settlement Fund will be provided in a motion for final approval of the settlement, following the notice and claims period.

Class members will be entitled to pro rata shares of the Net Settlement Fund based on a formula using the amount of their alleged damages for the class period, based on reasonably

available records provided by RXO, as well as information provided by claimants on their claim form. Payments to members of the Class will be in two parts: a portion deemed to be wages, for which a Form W2 will issue, and a portion deemed benefits or multiple damages, for which a Form 1099 will issue.

The named Plaintiffs will sign a general and complete release of all claims. Class members will release all wage and hour claims asserted or that could have been asserted under the operative complaint. To receive payment, Class members will be required to submit claim forms, by Court-approved deadlines, adequate for the TPA to prepare information returns and complete tax payments, as appropriate. All amounts in the Net Settlement Fund will be distributed among those class members who have timely submitted the required information, except that Class Counsel may request permission from the Court to designate a portion of the Net Settlement Fund as a reserve fund for handling disputes. This is a non-reversionary settlement, meaning that no amount of the Gross Settlement Fund will be returned to RXO. At the end of the settlement administration process, residual funds will be distributed to a *cy pres* recipient.

Additional details regarding the proposed settlement are set forth in the Agreement itself, which is attached as Ex. 1.

## Argument

A class action may not be settled or compromised without the approval of the Court. Fed. R. Civ. P. 23(e). At the preliminary approval stage, a court should determine whether there is cause "to submit the [settlement] to class members" and hold a later hearing "as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). After the notice period, the

Court can hold a further hearing to consider final approval in light of the Class members' response to the notice and all other relevant information.

**1.      The proposed settlement is fair, reasonable, and adequate.**

It is well established, of course, that settlements are favored. *Newberg and Rubenstein on Class Actions*, §13.44 (6th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). *See also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.).

The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate, guided by four factors: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). All of these factors support approval of the proposed settlement.

First, the Plaintiffs and their counsel diligently litigated the claims in this case. During the course of discovery, they sought necessary information through depositions and multiple rounds of written discovery, including through the filing of motions to compel. Following that initial period of discovery, they successfully obtained class certification, over RXO's vigorous opposition. After further discovery, they defeated RXO's motions for summary judgment and to decertify the class. The Court has been actively involved in much of this litigation, which is also reflected in the lengthy docket.

Second, the Agreement was negotiated at arm's length, following protracted discovery. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."). As noted above, the parties' settlement negotiations followed a period of lengthy and detailed discovery, including numerous depositions and the production of voluminous records and data. The parties strongly disagreed as to numerous factual and legal issues, as made clear by the course of litigation in this case.

Third, the proposed relief is adequate, in the judgment of Plaintiffs and Class Counsel. The Plaintiffs face risks with respect to proving liability and damages for each of their two claims. In terms of liability, the Plaintiffs are not entitled to any recovery unless, at a minimum, they prove that RXO was a joint employer under the *Jinks* standard. That standard is fact-intensive and unpredictable, given that there are no dispositive factors and that courts and litigants lack any firm guidance as to how the relevant factors should be weighed. In terms of damages, the Plaintiffs' ability to prove the deductions that drivers paid is complicated by the existence of a third-party (i.e., carriers) that created a layer between RXO and drivers. RXO deducted money from payments to carriers, but the evidence of the extent to which carriers

passed the cost of those deductions on to drivers is inconclusive and disputed. Likewise, the Plaintiffs' ability to prove the amount of unpaid benefits is hindered by uncertainty about which benefits are recoverable under applicable law and how they should be valued.

Based on the extensive data obtained during discovery, Plaintiffs estimated that the amount of deductions paid by the Class was about $725,000, *assuming that all deductions charged to carriers were passed along to drivers*. Calculating the estimated value of unpaid benefits was more complicated, but using one set of reasonable assumptions (focusing on drivers who worked full-time schedules and who therefore were more likely to have qualified for benefits), the value of unpaid benefits was about $3,800,000. With estimated total damages of about $4.5 million, the Total Settlement Fund represents about 50 percent of that estimate. RXO vigorously disputed Plaintiffs' valuations, particularly as to the amount of unpaid benefits.

Fourth, the proposed settlement will treat class members equitably relative to each other. The Agreement expressly provides that members of the Class receive shares of the settlement that are based on estimates of their potential damages. As one additional step to ensure that members of the Class are treated equitably, they will be provided an opportunity, when submitting claims, to provide good-faith estimates of their relevant delivery volume during the class period. That information will provide a cross-check for evaluating the reliability of XPO's data.

For all of these reasons, the Agreement proposes a resolution that is fair, reasonable, and adequate in light of the relevant factors.

**2.    The proposed payments to the named plaintiffs are fair and reasonable.**

The Court need not make a final ruling on the proposed payments to the Plaintiffs until the time of final approval, when it can assess any objections, but the proposed payments are

intended to compensate them for the effort and risk associated with their role in serving as named plaintiffs, as well as their execution of a broader release. Notably, each of the Plaintiffs was required to respond to written discovery and sit for depositions. Each of the Plaintiffs also attended both days of the mediation, coming in person to Class Counsel's office.

Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"). As one court noted, "[s]ervice awards [i.e., incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

Incentive awards serve a particularly important role in employment-related class actions. Named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y.

2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

**3.     The proposed attorneys' fees and costs are fair and reasonable.**

With respect to approving the proposed award for attorneys' fees and costs, the Court need not make a final ruling until the time of final approval, when it can assess any objections. As set forth in the proposed Class Notice, Class Counsel will make available on the settlement website, within 30 days of issuance of the Class Notice, a copy of their request for an award of fees and costs. All members of the class will have an opportunity to review the request before the deadline for objections.

Courts frequently favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307

(1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a lodestar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.*

An award of one-third of the fund for fees and costs is consistent with the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel who take cases on contingency often spend years litigating cases (typically, as in this case, while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest."). By permitting clients to

obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.

To the extent the Court deems it necessary or appropriate to compare the requested award for fees and costs to class counsel's accrued fees and costs, the requested award is plainly within the range of reasonableness. Given the fees and costs already incurred during this long-standing litigation, combined with the additional fees that will be incurred throughout the settlement approval and administration process, Class Counsel expect to incur total fees and costs of well over $215,000.

Under longstanding law, class counsel in common fund cases are entitled to recover a multiplier of their fees and costs. *See, e.g., In re Puerto Rican Cabotage Antitrust Litigation*, 815 F. Supp. 2d 448, 465 (D.P.R. 2011) (citing decisions approving multipliers of up to 3.5 times the lodestar) (citations omitted). Indeed, "courts routinely impose enhanced common fund awards to compensate counsel for litigation risk at the expense of beneficiaries who did not shoulder this risk." *Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763, 786 (4th Cir. 2019), *citing In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and "[t]here is nothing unfair about contingency enhancements in common fund cases because of the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it").

Here, the requested award of $750,000 will represent a multiplier of 3.5 or less, given the total expected fees and costs through the end of the case. Other courts have approved multipliers that are substantially greater. *See, e.g., New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving 8.3 multiplier),

*citing In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 736 n.44 (E.D. Pa. 2001) (lodestar multiplier in the range of 4.5 to 8.5 was "unquestionably reasonable"). *See also Beckman,* 293 F.R.D. at 481-82 (S.D.N.Y. 2013) (approving multiplier of 6.3 and noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers") (collecting cases). As a result, the requested fees in this case are reasonable and in line with settled authority.

4.      **The proposed notice satisfies Fed. R. Civ. P. 23.**

The proposed Class Notice was drafted in an effort to comply with the relevant requirements of Fed. R. Civ. P. 23(c)(2)(B), which requires notices issued in a Rule 23(b)(3) class action to include information about, among other things, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; and the right to object to the proposed settlement. More generally, Class Counsel have attempted to ensure that class members fully understand the background and context of the proposed settlement, including by making the notice available in Spanish and Portuguese.

If approved, the Class Notice will be sent by first-class mail (and, where possible, by electronic means) to the last known addresses of all members of the subclasses. To the extent any mailings are returned as undeliverable, the settlement administrator will use appropriate databases to skip-trace outdated addresses and will promptly resend the notices and claim forms to those updated addresses. There will also be a settlement website, at which members of the subclasses can obtain information relevant to the case, including a copy of the notice and Class Counsel's request for fees and costs, and submit the required information to obtain a payment from the Net Settlement Fund.

## Conclusion

For these reasons, the Plaintiffs respectfully request that the Court preliminarily approve the proposed class settlement and approve issuance of the Class Notice, all as set forth in the proposed order attached as Ex. 3.

        RAMON GONZALEZ, VICTOR RODRIGUEZ ORTIZ, and ADDELYN MARTE, on behalf of themselves and all others similarly situated,

        By their attorneys,

        */s/ Stephen Churchill*
        Stephen Churchill, BBO#564158
        Rachel Smit, BBO#688294
        FAIR WORK, P.C.
        192 South Street, Suite 450
        Boston, MA 02111
        617-607-3260
        steve@fairworklaw.com
        rachel@fairworklaw.com

Dated: September 24, 2025

ASSENTED TO:

RXO LAST MILE, INC.
By their attorneys,

/s/ Douglas J. Hoffman
Douglas J. Hoffman, BBO#640472
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Tel: (617) 367-0025
Fax: (617) 367-2155
Douglas.Hoffman@jacksonlewis.com

Adam L. Lounsbury (*pro hac vice*)
D. Paul Holdsworth (*pro hac vice*)
JACKSON LEWIS P.C.
701 East Byrd Street, 17th Floor
Richmond, VA 23219
Tel: (804) 649-0404
Fax: (804) 649-0403
Adam.Lounsbury@jacksonlewis.com
Paul.Holdsworth@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendant.


Dated:  September 24, 2025	/s/ *Rachel Smit*
	Rachel Smit